All right. Mr. Kaplan, I believe you're first up. Good morning. May it please the Court. As with counsel before us, rather than talking about what's in the briefs, I wanted to bring to the Court's attention, first of all, a recent U.S. Supreme Court case of Lozeman v. City of Rivera. The site is 138, Supreme Court, 1945. The decision was rendered on June 18, 2018. The holding of that case was that the existence of probable cause does not bar a First Amendment retaliatory arrest claim under the facts of that case. So I wanted to talk a little bit about the Lozeman case, which I do believe bears on the instant case because we do have a free speech retaliation claim. The case involved an outspoken critic of the city council with respect to an eminent domain case. He was at a city council meeting. He was told to or actually instruction was given by a councilperson to a police officer to carry him out because he had been speaking out critically. And there was a finding that there was probable cause for the arrest. And the Supreme Court, in looking at the situation, determined that the probable cause finding was not going to be a bar to this situation. And on the facts of the case, what was impressing the U.S. Supreme Court was the fact that it was, number one, the First Amendment, the right to petition, the right to speak. But secondly, that the place where the decision was coming from was coming from on high. And so under the facts of the case, they determined that there was a policy and practice which was behind the arrest. And so I wanted to read briefly from the case, and this is page number 1954. The quote, The fact that Lozman must prove the existence and enforcement of an official policy motivated by retaliation separates Lozman's claim from the typical retaliatory arrest claim. An official retaliatory policy is a particularly troubling and potent form of retaliation, for policy can be long-term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer. An official policy also can be difficult to dislodge. A citizen who suffers retaliation by an individual officer can seek to have the officer disciplined or removed from service, but there may be little practical recourse when the government itself orchestrates the retaliation. For these reasons, when retaliation against protective speech is elevated to the level of official policy, there is a compelling need for adequate avenue of redress," end quote. So I think what this was authored by Justice Kennedy, I think what the Court was concerned about was that, distinct from many cases that are filed that have to do with a State actor at a lower level, and there are cases where there is a charge that this is a retaliatory arrest, the Court was making a distinction. And I believe that, in our case, that because we are alleging that the chief policymaker, in this case Walter Reed, had a hand in the actions that were taken against the plaintiff, Roger McGee, that that case, I think the Supreme Court would also have the same response, that in that case, because it's coming from on high, that, as the Court is aware in the Monell cases, it can be established by a pattern in practice. It can be established, which is an express practice in policy, or something that's implied, or if the chief policymaker has an involvement. So in this case, we do allege that the chief policymaker, the district attorney for St. Tammany Parish and Washington The next thing I wanted to touch upon had to do with some dots that we presented to this Court in the briefing, but I don't think we may have sufficiently connected those dots with respect to any statute of limitations argument that has been raised by Jerry Wayne Cox. And so I wanted to invite the Court's attention to the U.S. Supreme Court's case, which I cite as 127, Supreme Court 2162. It's a 2007 case. And I believe in our case, we briefed this, but we talked about speech that occurred in 2012 with Jerry Wayne Cox at the Pentecostal Church in North Little Rock, where allegedly certain threats were made that if Roger McGee would step into the State of Louisiana, that Walter Reed would handle him. He then comes to Louisiana, and there are actions that we allege that were taken, and the primary actions are the denial of bail through what was called or what is known as a DA hold, and we'll get to that in a minute. And then afterwards, after Roger McGee is released, he alleges that he got a phone call from the daughter of Jerry Wayne Cox, Debbie Cox, and she asks the question, are you interested in still proceeding? So those three actions, the speech act of the threat, the action that we allege was taken in denying the bail, and then the third act, the speech, can be viewed as a single wrong under the continuing violation doctrine. And so for the statute of limitations purposes, even though that wasn't briefed with the court below, it wasn't mentioned in the decision of the district court below, but it's an issue that was raised by Jerry Wayne Cox, so I wanted to touch on that. Mr. Kaplan, jumping back to the heck issue, can you isolate for me and just try to be precise about the source of these free speech and false imprisonment claims? Is the source of those claims the initial arrest, or is it the bail decision later? It's the bail, and that's the important thing I want. It's a good question, because there are a number of cases where a plaintiff alleges a false imprisonment, and that necessarily followed from the arrest, and so I think there's an argument that is not available to that individual because of the heck doctrine. But in this case, for example, I don't think Roger McGee is going to be able to complain about three days up until the 72-hour hearing because I think that flows from the arrest, and because of his plea, he has a problem under heck. But then I think there's a break in the chain of causation because something else happens which doesn't flow, necessarily flow, from the arrest. What happens is, is that there's a denial of bail. And one of the things I wanted to point out to the Court, and I didn't see it. You're saying it's that denial of bail. Correct. That is the source of his false imprisonment and free speech claim and not his arrest. Correct. Correct. And this is the last thing. I was looking closely at the piece, the sole piece of evidence that was offered by Defendant Walter Reed, and I didn't zero in on this in the briefing, but I wanted to bring it to the Court's attention. If we look at the minute order, which is the minute order, it's interesting because it says resisting an officer and it says $750 signature, the signature bond, and then it says attachment, charge unknown, no bond set on this matter. So why is the charge unknown? So what's interesting is that in the Court's decision, the Court decision is different from the evidence because what the Court says, and this is record. I apologize for that feedback. In the Court's decision, the Court says that at the hearing a bond amount was set on one charge and the second charge was based on the body attachment for alleged failure to pay child support and no bond was set. But that's a problem because when the Court stated that that was the basis for the second charge, where did that come from? Because the document says charge unknown. And so I think actually this supports another — it's another support for the theory that the plaintiff has, that there was something strange going on with the fact that he was detained for three months. And from a due process standpoint, if you don't know what the charge is, how can you confront that charge? Obviously, with due process, central concept is confrontation, confrontation with respect to witnesses and cross-examining, but a fundamental thing is, what am I charged with? So why does this document say charge unknown? So this is another reason why, as the Court is aware, we felt that we should have an opportunity to conduct some discovery. I don't know if there's a court reporter transcript with respect to this — this hearing. I believe there's a court transcript for the 30-day hearing following that where we have evidence that there was an assistant DA present, which is why we feel that there is causation and we can show that there was involvement by the district attorney's office. But this document, which is the only documentary evidence that was submitted by the defendant in the motion for summary judgment, or the 12b-6 motion and the alternative motion for summary judgment, I think raises far more questions than it answers. When we were dealing with it with the Court below, the focus that I had was that it didn't provide any evidence of noninvolvement by the DA's office, but perhaps this document, maybe a reasonable inference, is that there was an involvement. We don't know. So that's the reason why, with the Court below, I said we should have an opportunity to conduct discovery. Another issue, I believe, which we have briefed, but I wanted to make some emphasis on, is the Keenan-Tahada case, which is the case that deals with the test for free speech retaliation, which I believe is properly, whether it chills a person of ordinary firmness from conducting a particular activity. I believe the Court below erred when it applied a test which I don't think is applicable in the Fifth Circuit, and I don't think it's applicable in any circuit that I'm aware of, where the Court said there was no undercurrent of violence. And if you look, if we look at the Keenan v. Tahada case, the Court really goes into some examples, and none of those examples involve an undercurrent of violence. So I believe the undercurrent of violence is really particular to the facts of Keenan v. Tahada. I think it's dicta. But if we look at the three examples that the Court offered in that case, one was a county board withheld legal notice advertising. The second example was release of confidential information regarding a rape investigation. And third, the denial of a land-use violation, going through the documents as opposed to sort of really helping us connect the dots you just pointed out to, so you're about out of time. So my question is, you were dismissed on 1286, right? Right. Okay. You know what the standard is. So you're pleading sufficiently, tell us succinctly as you run out, I mean, how would you plead keeps you in court? I think we've adequately pled a false imprisonment due process claim. We have adequately pled a free speech retaliation claim. I think our First Amendment complaint satisfies those two claims, and that's really what's before the Court is the free speech retaliation claim. Which the trial court said was barred under HEC, and you say the claim is connected to the bail and not to the arrest, right? Correct. So we got you there. So on the due process claim, the trial court said that your pleadings didn't demonstrate that Mr. Reed was causally connected to the offense. So what in your pleadings do you say overcomes that? Well, the pleading does allege causation. What happened was the Court turned the 1286 motion, converted it into a summary judgment motion, looked at one sheet of paper, saw some argument, and concluded that there was no direct involvement by the district attorney's office, and we said, wait a minute, this is a problem. This is a 1286 motion. If you look at the four corners of our First Amendment complaint, we do allege causation. So I think we've satisfied our job at the pleading stage, but I think if you look at it from a summary judgment stage, what the appellant has shown is that there are contested issues of material fact with respect to causation. All right. I just want to make sure at least I understood what you were saying. No, I appreciate that, Your Honor. You're sort of taking us through the jurisprudence, but stay focused. All right. You've exhausted your opening time. Thank you. Thank you very much. On behalf of Mr. Reed. Good morning, Your Honors. May it please the Court. My name is Cary Menard. I'm an assistant district attorney in the district attorney's office in the 22nd Judicial District, and I represent Walter Reed in his official capacity only in this matter. We intend to rely upon our briefing, and as the Court is aware, there are many, many issues brought before this Court. I would suggest that I will address two primary issues and certainly answer any questions that the Court may have. Key point number one, a district attorney cannot hold a defendant in jail and prevent the setting of bail, release from jail is purely a function of the judiciary. And in this case, Mr. Reed in any capacity would be incapable of doing that. Secondly, other than bald allegations, which are not substantiated by facts, there is absolutely no evidence in the record or otherwise that Mr. Reed allegedly participated in Mr. McGee being held in jail for 101 days nor in any way interfered with Mr. Reed's — I'm sorry, with Mr. McGee's right to free speech. If the Court reviews, and I know the Court has, it is mere speculation having to do with any connection between cops, Reed, the sheriff, and the detention and the ongoing detention of Mr. McGee. With regard to the sheriff, it's interesting to note that in the original petition, as well as the argument at the district court level, the sheriff in this case was allegedly a co-conspirator in all of the alleged actions. However, at this point, the sheriff is not before this Court. He was dismissed on a 12b-6 motion and was not appealed. His participation or his alleged participation was in no way appealed by Mr. McGee. Appellant, it's not as though, Your Honor, that he sat in jail for 101 days and was not before an impartial magistrate. Quite the contrary. Mr. McGee, within 72 hours of his initial arrest, was brought to a bond hearing. That is not in dispute. On March the 31st, within 30 days of his arrest approximately, he was brought to an arraignment, and that is the minute entry which counsel has referred to. It is also interesting that Mr. Kaplan, my colleague, mentioned that there is nothing other than the minute entry to say what happened on that day or what charges were being brought against Mr. McGee. In fact, appellant admits in his pleadings and his briefs that Mr. McGee had been arrested on two counts of failure to pay child support as a result of a body attachment from the State of Arkansas. So the appellant himself admitted that that was the reason he was originally arrested and subsequently incarcerated. Our point is, Your Honor, that in addition to being brought up for an arraignment on the felony charges of failure to pay child support, he appeared at other hearings, other arraignments with counsel. Finally, it would be wholly inconsistent to allow the 1983 action to move forward based upon the pleas of guilty to the felony, failure to pay child support, as well as the misdemeanor resisting arrest. Appellant appeared — appellant did, in fact, appeal his guilty pleas. He appealed it to the Louisiana First Circuit Court of Appeal, which found no irregularities and sustained the guilty pleas by McGee for failure to pay child support and for resisting arrest. Mr. Menard, jumping to the request for absolute immunity. Yes, Your Honor. In Mr. Reed's official capacity, can you just tell me how that position squares with our decision, I think, 99 in Burdge v. St. Tammany Parish, which, unless I'm missing something, says absolute prosecutorial immunity isn't available for officials that are sued in their official capacity? Your Honor, we believe that absolute immunity in this case is controlled by Imbler and its progeny, and that in the case of Burdge, it is based on a different fact, Your Honor. And I have a note here. The Burdge case actually turned on, first of all, we are not claiming Eleventh Amendment immunity, which the Court is aware of. But secondly, Burdge was a case that was based upon Monel claims and was a case involving the withholding of Brady material and the adequacy of evidence presented at the trial court level. Obviously, the facts in this case are different. And as, once again, we are relying upon, excuse me, Imbler and its progeny. Your Honor, with that, we request that the finding of the district court of failure to state a cause of action under 12b-6. Let me just ask you to address the last point made by counsel, I think made in the brief, that although teed up as a 12b-6, he makes the argument in the brief and in there that essentially the trial judge did look to look beyond the pleadings but look at either some other documents or something else, in effect transforming the 12b-6 inquiry into summary judgment. What do you say? Your Honor, I do know that argument. I read the trial court, the district court's reasons, and the reasons stated were 12b-6. At no point did the district court say that it was converted to a summary judgment. We have argued in the alternative that should this Court find that the trial court did, in fact, convert to a summary judgment, that the case should still be dismissed based upon the Keenan analysis as well as no causation. Mr. Counsel for Appellant said that there was no undercurrent of violence, and that was the reason why the district court dismissed. In fact, there were two reasons. The second reason was that the Court found that there was absolutely no causation between what may have occurred to Mr. McGee and the defendants in this case. Okay. All right. Thank you. Thank you, Your Honor. Mr. Knight. Good morning, Your Honors. May it please the Court. James Knight here representing Jerry Wayne Cox. I have the shortest amount of time here today, so I'll be brief. We allege that the district court was appropriate in dismissing Jerry Wayne Cox from the pleadings based upon the claims of being heck barred. The fact is, as we don't even get to it, I reserved in the motion for summary judgment and do argue at some in the brief that the actor is a private actor. Jerry Wayne Cox holds no position with the State, has no authority to make any decisions regarding someone's arrest or rendering of the bond. The appellant argues that the Keenan applies. However, the difference in language and facts regarding the Lozman case cited, there is a requirement of probable cause of no finding of probable cause for the claim to succeed for a plaintiff in this case. McGee pled guilty to the very charges that he was arrested for, failure to pay the child support. Therefore, there is probable cause and is such a First Amendment claim pursuant with Mesa, must fail no matter how clearly that speech may be protected by the First Amendment. Hartman further cites that there must be a show of no probable cause to prevail. Jerry Wayne Cox does not acknowledge the two alleged threats made in the original and amended pleadings. Furthermore, the attempts to modify the claim to be from the arrest and confinement as being the basis versus the actual threats being the retaliation in the motion in opposition of the motion of summary judgment, I believe that's where appellant argues an alternative regarding the prescription. I would argue that the first alleged threat being in 2012, it's prescribed by this time and it had taken place when the suit was filed. Furthermore, if you look at the information as given, the alleged threat was that Reed will get you, and the second 2014 threat was allegedly from my client's daughter. No proof, no allegation of any conspiracy between the parties has been alleged or provided pursuant with allowing for a private actor to be joined in joint activity with a State actor pursuant with Little v. Epps. There must be an agreement between the State actor and private actor to deprive the plaintiff of constitutional rights. Mr. Knight, just hypothetically, hypothetically, if your client had conspired with Reed to deny Mr. McGee's right to bail, do you then agree that would have been an illegal act? No, because I don't see how Jerry Wayne Cox has any authority or ability to facilitate the withholding of bond and bail, as that is specifically limited to the judiciary and the commissioner in the 22nd JDC to set that. So even, again, hypothetically, but even if Mr. Cox had sort of conspired in some way, that would not have been an illegal act in your view because he had no lawful authority to carry it out. Under your hypothetic, if there is some ability of Cox and Reed to facilitate the lack of bail, neither of those individuals have the authority to make any decision or influence any decision with regards to that. So talking about doing something and actually having the ability to do it, I think, would be two distinct matters, and I don't think we can get there to say that just talking about it would get us there. We would have to have Commissioner Foyle or a named judge that would be part of a conspiracy. There's no allegations of any of that in the amended pleading or the original pleading. And having the fact that I'm sure extensive discovery went through regarding Sheriff Seale, no evidence came up above about him being part and parcel of this alleged conspiracy. All the alternative grounds for affirming that you raise, the district court never really got into those because it kind of pivoted on Hecht. Yes, Your Honor. And I just wonder what would be the merit of us wading into those in the first instance, as opposed to sending it back to the lower court to tackle? Well, the main reason I raised this specific one in regards to prescription is the first time it was raised was in the opposition for motion for summary judgment before the trial court filed by appellant. And so out of an abundance of caution, I briefed that some in the reply brief on the motion for summary judgment. But the trial court had already rendered their decision. I filed it the day it was allowed to be filed, and they rendered their decision that day, based upon the breadth of evidence that the decision was appropriate. And we would ask that, you know, clearly that those decisions are valid on their face. Jerry Wayne Cox is a private actor, which is still somewhat reserved in the fact that we're arguing that he's alleviated from any liability, regardless under Hecht as a public or a state actor. But we don't even get to the private actor, and there's more of a burden for the appellant to even try to get to that extent as I briefed in the brief as well. So we would ask that this court affirm the trial court's decisions to dismiss Jerry Wayne Cox and allow the parties to move forward. Thank you, Your Honor. Thank you, sir. Mr. Simmons, you have Mr. Reed and his personal questions. That's correct, Your Honor. May it please the Court. Rick Simmons, I represent Walter Reed in his individual capacity. I also represented Walter Reed in connection with the investigation, the trial at the district court level, the appeal, which was just rendered on Monday. I certainly adopt all of the arguments by Mr. Menard in connection with the immunity grants. The policy concern here is that if you start having discovery based on these type allegations, you're going to open up a floodgate of allegations based on hearsay that the district attorney said something, because that's where we are at this point. I just ask for additional time over and above Mr. Menard's because I think there's a lot of confusion with regard to the criminal case, which I lived through. But you have to keep in mind if they're asking for you to consider, by request for judicial notice, the criminal case, I'd also suggest that you look at the timing. This case was brought on the civil side in 2014. Mr. Reed was indicted in April of 2015, and instead of answering the more definitive statement request, the first amended complaint was filed 15 days later. At that point, cherry-pick certain comments from the indictment to indicate that there's some massive conspiracy among all the parties. There's just no basis for that. Even the pleadings are insufficient. The criminal case is mischaracterized here. For example, in the brief of the plaintiff, they said the representation by Mr. Reed in personal injury cases without a written agreement was sort of the essence of the criminal case. That's not what the criminal case was about. The criminal case was about his use of campaign funds in connection with Pentecostals. If you're in Washington Parish, you know that that's a new political base. My client was reelected many times based on that political base. He's got support from these people. In fact, in the criminal case, he's put $25,000 in his campaign into a gymnasium, and given bond-pending appeal, Judge Fallin said this is not a usual fraud case. I mean, the point is he used his campaign funds to get his political base, which is a Pentecostal, and Mr. Cox is a Pentecostal preacher. But that's where it ends. There's just a look through 80,000 documents, a hundred witness statements, and Roger McGee is not there. I didn't even get a 302 on him. So this idea that somehow he gave some information that led to the demise or bringing the criminal case, there's just no basis for it. But look at the pleadings, and you'll see March, excuse me, May 1st, 15 days after the indictment, suddenly you're cherry picking a criminal case, which has nothing to do with this matter. In connection with the criminal defense, we were suggesting that in the criminal case that there can be a dual purpose. In other words, if you spend money for the purpose of a political base, and perhaps a second consequence would be a development of plaintiff practice, that's not a matter. The main thing is that Walter Reed, in his private or individual capacity or official capacity, has no ability to affect the bond. And Mr. Menard has made that point, and I think that when you look at that, there is no basis for indicating reprisal or any participation by Mr. Reed in connection with this matter. Also, the — some of the allegations by the plaintiff make no sense. For example, there was some issue that somehow Mr. Reed, being a former FBI agent, had some type of clout with the FBI. Mr. Reed's been the district attorney for 30 years. Before that, when I was in the U.S. attorney's office, he was an assistant U.S. attorney. He was never with the FBI. So the indication that because he had some connection with the FBI, he had some at all. Your Honors, I believe that it would be a serious mistake and open up the floodgates to further discovery in cases like this, where somebody says — it's almost like he's related or said something on behalf of the D.A. or is quoting the D.A. where he can get some reprisal. That's — there's nothing in the record where Walter Reed said anything. They're talking about what Cox — Mr. Cox said. And I think he's a private citizen, and a lot of times private citizens, even if something like that happened and he said something, they sometimes try to use somebody's name. That happens a lot. I know so-and-so. But if we're going to start having — open up discovery gates based on this type of information, I think if you look at the basis for qualified immunity, it's based on the concept that D.A.s and people in public office, if they have to defend themselves on these type allegations, you're really into a litigation nightmare. So we would ask that the reasons set forth in our brief and our adoption of the D.A.'s position, which is the same as ours, but I did want to speak because the confusion on the criminal case, it has nothing to do with these matters. Thank you. Thank you, sir. Back to you, Mr. Kaplan. Thank you. Back to the issue of the 12B-6, which we believe was converted to a motion for summary pages 405, 406, quoting from the decision, quote, because neither defendant nor any employees of the district attorney's office — officer, it says, were involved in the plaintiff's allegedly not being permitted to post bail. Defendant is not causally connected and plaintiff's due process claim does not survive under Section 1983, end quote. That is a finding of fact. We believe it's impermissible. It's weighing evidence and credibility. And the Court didn't say that those things were not alleged. It comes out and says that the district attorney's office — it says officer, but I think it's a mistake — was — were not involved in the — were — neither defendant nor any employees of the district attorney's officer were involved in the plaintiff's allegedly not being permitted to post bail. So I believe it's clear from the record that that's what the Court did. And in the face of that, there is evidence from — from Marion Farmer, who was the former district attorney, who submitted a declaration saying that he contacted both the sheriff's office and the district attorney's office and that he was told that there was a, quote, DA hold, end quote, imposed, and that Roger McGee would not be able to bail out. And that's coming from the former district attorney. And he said, it's not a term that I used, but just because something ought not to be done doesn't mean it wasn't done in this case. With respect to the 72-hour hearing, I don't believe that was an arraignment. Counsel for — for Walter Reed in his official capacity made a statement to the Court which I believe is a misrepresentation. I don't believe it was intentional, but he said that there were other hearings where counsel were present. There is no evidence of that. That is a — that is a misrepresentation to the Court. There is evidence of a hearing 30 days later, and our evidence, the plaintiff's evidence, is that Leanne Wall, an assistant district attorney, was present, and two witnesses, Roger McGee and his aunt Ruby, believe that assistant district attorney Wall made a statement to the Court that there was a DA hold. With respect to absolute immunity, I believe the panel is correct that when it comes to Walter Reed in his official capacity, absolute immunity is not a bar. We didn't go into it, but I believe that if the Court looks at the individual capacity claims against Walter Reed, I believe that under the functionality test, it was not within the normal prosecutorial function to engage in any threats, and it was not within the normal prosecutorial function to — to assist in a process where there was a denial of bail. With respect to Mr. Cox and his — we'll strike that in our first amendment complaint, Jerry Wayne Cox is alleged specifically to be a joint actor working in concert with a State actor, so we believe that under a 12b-6 analysis that the — the pleadings are sufficient with respect to that. There was a comment made about the political base of Walter Reed and how the political base is one of Pentecostals. In our case, our evidence is that Walter Reed was, along with Jerry Wayne Cox, in North Little Rock, Arkansas. Why was Walter Reed there? His political base is not in Arkansas. He was the district attorney for Louisiana, for the Washington Parish and for St. Tammany Parish. Why was he there? I believe that what happened was that there was a contribution made in North Little Rock where Jerry Wayne Cox confronted Roger McGee, and that's where things happened. So as far as the political base is concerned, it's not in Arkansas. One more thing. We note that a Michael Cotton pled guilty in December of 2017 to soliciting sex from a woman in exchange for a bail reduction for her boyfriend. This was an investigator who, I believe, was working with Walter Reed, so the notion that the DA's office never puts its hand on the scales with respect to bail, I believe, is not the case. Okay. All right. Thank you very much. Thank you, counsel on both sides, for presenting the briefs. This case had not originally been set for oral argument, and I know you didn't ask for oral argument, but we set it to try to unscramble or figure this out. I mean, it's kind of scrambled, to put it mildly. So we know you didn't ask for argument, but we did so we could try to get a panel. So we appreciate your coming and aiding us in figuring it out. Thank you. All right.